UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-14046-MOORE/McCABE
18 U.S.C. § 371
18 U.S.C. § 981(a)(1)(C)

UNITED STATES OF AMERICA

vs.

ROYCE GILLHAM,

        Defendant.

_____/

## INFORMATION

The United States Attorney charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Information, in the Southern District of Florida, and elsewhere:

#### Persons and Business Entities

1. Defendant ROYCE GILLHAM ("Defendant GILLHAM") was a resident of Florida, who served as the General Manager of Company A of Fort Pierce, Florida.

2. Between early 2017 and mid-2019, Company A operated a facility where it produced biodiesel, a type of renewable fuel. Throughout this time, Company A sought various government incentives based on its purported production and blending of biodiesel.

3. Owner A was the owner of Company A and Employee A was the Director of Business Development.

4. Company B was a California corporation owned by Customer A. Customer A owned a renewable fuel production facility in Europe.

#### Renewable Identification Numbers

5. Laws passed by Congress, particularly the Energy Independence and Security Act of 2007 ("EISA"), required the EPA and the IRS to promote renewable fuel production and use in the United States.

1

6. To this end, the EPA created a program requiring petroleum refiners and importers to have renewable fuel in their product portfolio. Under this program, refiners and importers were required to produce a certain amount of renewable fuel or, as an alternative to physically producing this fuel, they could purchase credits (also called "renewable identification numbers" or "RINs") from renewable fuel producers.

7. Renewable fuel producers generated RINs when they produced qualifying renewable fuels, such as biodiesel, in compliance with EPA regulations. Once a RIN was generated, it could be traded or sold on the open market. RIN transactions were reported electronically through the online EPA Moderated Transaction System (EMTS).

8. RINs could be sold with the volume of fuel they were generated on, or, if lawfully separated from the fuel, they could be sold independently of the fuel. There were various regulations governing when and how RINs could be separated from the underlying fuel.

9. RINs could only be generated for the production of biodiesel if the biodiesel produced met a set of industry standards known as ASTM D6751.

10. There were additional regulations governing the sale and use of fuels on which RINs had been generated, including the restriction that RINs could only be generated on a quantity of fuel once and that any RINs generated on fuel that was exported needed to be "retired," that is, surrendered to the EPA.

### Refundable Tax Credits

11. The EISA also tasked the IRS with encouraging the production and use of renewable fuels. In particular, EISA tasked the IRS with administering tax credits associated with the production of various renewable fuels and fuel mixtures, including biodiesel. These included the Biodiesel Mixture Credit ("BMC"), 26 U.S.C. § 6426(c), which entitled registered claimants to a one-dollar tax credit for every gallon of biodiesel used to produce a mixture of biodiesel and petroleum-based "taxable" fuel which was then sold for use as a fuel or used as a fuel by the claimant.

12. The BMC was fully refundable, meaning that it could reduce a registered recipient's excise tax liability below zero, entitling them to a refund, or payment, from the IRS.

13. It was illegal to claim these credits unless the fuel was produced, bought, blended, and sold in compliance with IRS regulations.

## COUNT 1
### Conspiracy to Commit Criminal Offenses
### 18 U.S.C. § 371

1. The allegations contained in paragraphs 1 through 13 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

2. Beginning on or about February 1, 2017, and continuing through in or around February 2020, the exact date being unknown to the United States Attorney, in the Southern District of Florida, and elsewhere, the defendant, ROYCE GILLHAM and Owner A did knowingly and willfully combine, conspire, confederate, and agree with each other, and other persons known and unknown to the United States Attorney, to commit an offense against the United States, that is:

(a) to make and present claims, specifically claims for the Biodiesel Mixture Credit, upon and against the United States and the IRS, knowing such claims to be false, fictitious, and fraudulent, in violation of 18 U.S.C. § 287; and

(b) to transmit and cause to be transmitted by means of wire and radio communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1343.

### PURPOSE OF THE CONSPIRACY

It was the purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (1) marketing and selling fraudulent RINs that had been generated for fuel that had not actually been produced or that had been exported overseas as a

feedstock; and (2) fraudulently seeking biodiesel tax credits for fuel that had not actually been produced or that had been exported overseas as a feedstock.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among other things, the following:

1. It was part of the conspiracy that individuals at Company A, including ROYCE GILLHAM and Employee A, generated RINs on fuel that had not actually been produced or sold.

2. It was part of the conspiracy that individuals at Company A, including ROYCE GILLHAM and Employee A, produced false records purporting to document the sales of fuel on which the false RINs had been generated. These false records claimed that the fuel had been sold to various third parties, including Company B, as well as two shell companies that had been set up by Owner A and Individual A, respectively.

3. It was part of the conspiracy that individuals at Company A, including ROYCE GILLHAM and Employee A, generated RINs on fuel that had not been produced and on fuel that had been exported as feedstock to Company B. Thereafter, these individuals separated the RINs from the underlying fuel by falsely claiming that the fuel had been "used without further blending as transportation fuel."

4. It was part of the conspiracy that individuals at Company A, including ROYCE GILLHAM, Owner A, and Employee A, marketed and sold the fraudulent RINs that had been generated on fuel that had not actually been produced or that had been shipped overseas as a feedstock to Company B.

5. It was part of the conspiracy that ROYCE GILLHAM, Owner A, and Employee A sought biodiesel tax credits on behalf of Company A for fuel that had not actually been produced and fuel that had been exported from the United States as a feedstock.

6. Between on or about February 17, 2017, and April 19, 2019, Defendant GILLHAM, Employee A, and others generated 1,574 batches of RINS through the EMTS system, claiming to have produced 9,739,105 gallons of biodiesel.

7. Between on or about April 19, 2017, and April 16, 2019, Defendant GILLHAM, Employee A, and others sold RINs 52 times through the EMTS system, totaling 14,458,166 RINS.

## OVERT ACTS

In furtherance of the conspiracy, and to accomplish the objects and purpose thereof, ROYCE GILLHAM and others did commit the following overt acts, among others, in the Southern District of Florida, and elsewhere:

1. On or about June 20, 2017, Owner A incorporated a business through the Florida Secretary of State, naming his then-girlfriend as the Registered Agent and Incorporator.

2. On or about March 9, 2018, Defendant GILLHAM, Owner A, and others prepared and sent IRS Form 8849, requesting tax payments in the amount of $2,296,653 for the purported production of 2,296,653 gallons of biodiesel mixtures in calendar year 2017.

3. On or about February 6, 2020, Defendant GILLHAM, Owner A, and others prepared and sent IRS Forms 8864 and 8849, requesting tax payments in the amount of $5,900,696 for the purported production of 5,900,696 gallons of biodiesel mixtures in calendar year 2018.

4. On or about February 6, 2020, Defendant GILLHAM, Owner A, and others prepared and sent IRS Forms 8864 and 8849, requesting tax payments in the amount of $1,467,331 for the purported production of 1,467,331 gallons of biodiesel mixtures in calendar year 2019.

All of which is a violation of 18 U.S.C. § 371.

## FORFEITURE ALLEGATIONS

1. The allegations of this Information are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain

property in which the defendant, **ROYCE GILLHAM**, has an interest.

2. Upon conviction of a violation, or conspiracy to commit a violation, of Title 18, United States Code, Section 1343, as alleged in this Information, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such offense, pursuant to Title 18, United States Code, Section 981(a)(1)(C).

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and the procedures set forth in Title 21, United States Code, Section 853, as incorporated by Title 28, United States Code, Section 2461(c).

TODD KIM
ASSISTANT ATTORNEY GENERAL

_____
ADAM C. CULLMAN
SENIOR TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE

_____
MARKENZY LAPOINTE
UNITED STATES ATTORNEY

_____
DANIEL E. FUNK
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 24-CR-14046-MOORE/McCABE

v.

ROYCE GILLHAM,

　　　　　　　　　　　　　　　　 /
　　　　　　　Defendant.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of counts _____

**Court Division** (select one)
- ☐ Miami
- ☐ Key West
- ☒ FTP
- ☐ FTL
- ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take __10__ days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   ☐ 0 to 5 days
   - II  ☒ 6 to 10 days
   - III ☐ 11 to 20 days
   - IV  ☐ 21 to 60 days
   - V   ☐ 61 days and over

   (Check only one)
   - ☐ Petty
   - ☐ Minor
   - ☐ Misdemeanor
   - ☐ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard? (Yes or No) No
14. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss? (Yes or No) No
15. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

By: _/s/ Daniel E. Funk_
DANIEL E. FUNK
Assistant United States Attorney
FL Bar No.   0592501

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** ROYCE GILLHAM

**Case No:** _____

**Count #: 1**

Conspiracy, in violation of Title 18, United States Code, 371

\* Max. Term of Imprisonment: 5 years
\* Mandatory Min. Term of Imprisonment (if applicable): N/A
\* Max. Supervised Release: 3 years
\* Max. Fine: $250,000
\* Special Assessment: $100

\*Refers only to possible term of incarceration, supervised release and fines.   It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.